Case number 16-6353, USA v. Dr. Philip Robinson. Argument not to exceed 15 minutes per side. Mr. Thompson, you may proceed for the appellant. Good morning. My name is Dan Thompson. I'm here on behalf of Dr. Philip Robinson. I'd like to reserve four minutes for rebuttal. Very well. The issue presented today is whether or not the district court abused its discretion in not ordering a new trial and finding that the jury's verdict was not within the range of evidence and also unreasonable. Interwoven in this issue is the application of random sampling and extrapolation in proving damages in false claims cases. Particularly in this case, Dr. Robinson did not address the issue of the random sampling. What we're talking about is the extrapolation of the damages for the jury. In the government's complaint, they took 25,779 claims over a five-year period, took a random sample of 30 claims. They had their medical expert look at those 30 claims. He decided 25 of those 30 claims were false. Using that information, the government called a second witness. Their second witness was Erica Halsey. And Ms. Halsey took that 25 false claims, found out how much was paid on each claim, and then extrapolated that number out and produced a damage calculation with a 90% confidence rating of $974,595. The issue that happened in this case was when the jury went back to deliberate, the jury did not fully believe the government's expert, Dr. Dickinson. So they came to a new finding on false claims. They ended up choosing 13 out of the 30 claims to be false. What happened next was the jury had no way to determine what the damages were after making that finding. Sure they did. I mean, the government puts on the evidence and it says, here's the amount of each claim that we paid to Dr. Robinson, $56. We think 83% of those were bogus or whatever it was. And there were X number of claims. And you do the math and you get a number. And they got $974,000. And now the jury is just changing the 80-something percentage down to 43%. And then the jury itself got the math wrong in your favor. But, I mean, why isn't that a very straightforward methodology? I think that runs into the risk of using extrapolation in these cases. But you didn't challenge the methodology itself. In the district court, as I understand it, you only challenged its application, the manner in which they applied it and whether they kind of messed it up when they did it. Correct. I think the jury, and the danger that you get into is you have juries that are requesting calculators and doing their own mathematical calculations out there and coming up with numbers that aren't based on anything in the evidence. The number they came up with. They actually got a break because they only gave 43% of the damages that the government presented to them. So, I mean, my first reaction was it's probably a compromise verdict, that juries compromise all the time. They say, well, I think the government's entitled to something, but probably not as much. And how do we get everybody to agree on it? So we're going to cut the baby in half. I mean, that happens in the jury room all the time. And to say that, well, it might not be the most rational damage result, I mean, that happens, though. As long as the presentation was rational, the fact that they cut it down and it's hard to figure out exactly how they do that, we usually let the jury's discretion prevail, don't we? I agree that the jury will split the verdicts often and try to find that. But in this situation, what's happening is we've presented them with a complex mathematical formula. And I think what is telling is Erica Halsey's testimony, we said, what if the jury finds a different number? What if they find 10 out of 30 claims? And her own testimony said, I would have to recalculate that. Yeah, but I mean, this is literally, this is like a sixth grade level of math. Literally. Well, I mean, and Ron, I guess I disagree. There are over a trillion different combinations of the 13 out of 30 claims. Sure. Numbers lend themselves to, you know, infinite combinations. They do. Not infinite, but a lot. I agree. And I think the jury, if the jury is permitted to be given the testimony in the form of extrapolation, the jury needs to be guided better so that the jury isn't all over the place with these mathematical combinations. Right. Did you have a, is there a specific objection to that issue? We did not make a specific objection. All right. Haven't you waived that issue then? I think when you look at the jury verdict, you have to. Well, it's a little late after that point to say the jury should have been instructed this or that when there was no objection and there was no request for such an instruction. What happened was. It's after the fact. And, Your Honor, and I do agree that the earlier you can object to that, the better we can address that. That's how you preserve the issue. But the issue is the jury took a path that the government didn't foresee and we didn't foresee. They chose. Let me ask you this. At the trial, did the trial counsel for your client challenge some of these claims? Was there some proof presented as to how the jury could get to 13 of 30 of these, only 13 being fraudulent? There was. And, you know, there was two separate steps. One is the falsity of the 30 claims. And evidence was presented on each of the 30 claims by the government and by Dr. Robinson. And then the next issue was what is the amount of damages? Only one expert testified concerning damages and only one number was ever produced. And the only number that was ever produced was a 90 percent confidence rate for 25 out of 30. Why wasn't it rational for the jury to accept the counsel for your client's presentation that only 13 were valid? And then they simply multiplied to come up with their number using sixth grade math. I mean, why isn't that a rational way to do it? I think what makes that not rational is the testimony of the damage expert. Because the damages were presented by the expert, I think you're giving the jury just a limited basis and not allowing a jury, your verdicts will be all over the place. And I understand jury verdicts are never going to be mathematically sound. And that's not what we're asking for. But the whole purpose of allowing extrapolation and random sampling in these sort of cases is because the math is reliable, acceptable findings. Well, you know what? I mean, the only, I mean, this expert testified under Rule 702, I presume, right? The only, it would seem like the only specialized knowledge here, you know, for purposes of that rule, was the statistical knowledge and analysis leading to the conclusion that a sample size of 30 was adequate. And again, beyond that, once you establish that 30 is enough and that's reliable and we can extrapolate from there, then really, I mean, literally, it's sixth grade math from there and it's not specialized knowledge. It's a percentage times a number times a number. That is not the mathematical way she calculated damages. The way she calculated the damages, she took a chart, found out how much each claim was paid, found out the loss associated with the sample size, and then extrapolated that number. Extrapolated? That's just times the number of claims, right? Times the number of claims times the average amount of loss. Right. I mean, it's multiplication. That's all we're talking about. It is, but the jury in this situation didn't even, they didn't extrapolate at all. The jury actually took the only number that they saw and multiplied it by 43 percent, which is the number they found. And it is Dr. Robinson's contention that that finding is not a reasonable finding by the jury. There's actually thousands of combinations of lesser damages. The issue with extrapolation is every dollar that they are off by the average loss is 25,000, is multiplied 25,000 times. But as Judge Griffin pointed out, I mean, it helps you here. They were off in your favor, so. They gave you a break. You want us to do a kind of reverse remediator or something? I don't think in this situation they necessarily did. There are over. It appears to me there's a sound basis for the government's damage calculation and the fact that the jury discounted it for whatever reason, perhaps maybe to get a vote or two, to get the number of jurors they needed to get the verdict. I mean, okay. And Judge, just one last response. In order to, I don't necessarily believe there was a break. Under the calculations, if you use the 13 lowest paid claims, if they found the 13 lowest paid claims, and not even the 13 lowest of the 30 claims, I think you could go up to the 20 lower claims. If those claims were found to be false and not the higher paying claims, there are thousands of combinations less than the 419,000 which the jury awarded. All right. Anything further? No. Thanks. Thank you. You'll have your rebuttal, Mr. Thompson. Good morning. Good morning, Your Honors. May I please the Court? I'm Jeffrey Clair with the Department of Justice for the United States. I think Your Honors have understood well the thrust of the government's argument. The only thing I would add that hasn't come up yet this morning is that an appeal from a denial for a motion for a new trial comes before the Court with a heavy burden on the moving party. The standard, there are various formulations of the standard the district court must apply that stress the verdict really has to be beyond the realm of a reasonable interpretation of the evidence. I think what's animating that standard is a concern that if new trial motions are granted absent a compelling showing, it harms the integrity of the jury process, that there has to be a kind of eye towards the respect that has to be accorded to the jury's functioning that makes such motions rarely granted in the district court and on appeal only reviewable for abuse of discretion. Your Honors has noted that the jury has the power to render what is essentially a compromised verdict so long as it is within the range of evidence that is presented to it, and that is certainly the case here. The jury had all sorts of information about how to calculate evidence of what the government's injury was. It knew how many claims had been submitted. It knew the low end and high end of every claim that was submitted. It knew the average amount of the claim that was submitted for the entire universe of claims, and it knew the average amount of claims that were submitted within the sample. You can take, once the jury has found the number of false claims that it believes have been submitted, you can take any one of those numbers, multiply it with sixth-grade math, times any one of those measures of the damages per claim, and come up with a jury award, a verdict that's actually higher than the amount that the jury found here. If the defendant had wanted a more specific kind of calculation that gave more specific instructions to the jury, he certainly could have moved for such an instruction. If you look at footnotes two and footnotes three of the district court's opinion on the new trial motion, the court notes that the defendant didn't do that. There was an instruction that the jury did not have to arrive at a determination with mathematical exactitude. That was not objected to. There was no alternative instruction that walked the jury, that would walk the jury through a kind of more detailed calculation. If you look at the jury verdict form, the jury was only asked to make two determinations, how many false claims were submitted and what is the amount of damages to the government. That leaves an enormous amount of latitude in the jury. And the only question then is the numbers that the jury came back with, were they within the range of evidence? And there's really, I think, no argument that they were. All the government's evidence would support awards of a much higher amount. The defendant did not put on an affirmative case about an alternative damages calculation himself. So the only evidence before the jury is the government's statistical expert explaining how the sample was drawn, the average amounts of money paid out on false claims, how those numbers could be extrapolated to the universe of claims at all, and the evidence of falsity, which I think is really not contested here. There is medical testimony that these claims, a large percentage of claims in the sample, were not reasonably necessary and didn't meet the medical necessity test of the Medicare statute. Page 9 of the appellant's brief, I read the appellant is conceding that as to at least 13 of those claims, there was sufficient evidence that these claims were false. That's, again, a number that's in line with the jury's own finding. So there's really, I think, nothing in this record that suggests that the damage calculation was not adequately supported by the record or that indicates that the jury's findings were somehow not reasonably in line with the evidence presented. Only the damages issue is before us today. That is my understanding. And, I mean, you do say in your brief that this sort of statistical evidence or extrapolation can be used to prove any element of an FCA claim, right? We have cited case law for that proposition in support of a narrower proposition. I guess just, I mean, maybe just from my own background understanding, I mean, it seems that, in fact, it was used to show liability as well as damages here, right? I think that's a fair reading of the record. Because the medical person explains that she thinks, you know, whatever it is, 22 of the 30 claims are false. And you use the statistical extrapolation to show that that liability holds for, I mean, that ratio holds for purposes of liability, I guess, right? That's correct. We have some amicus that are unhappy about that. Right. Well, the court didn't accept that brief for filing. Somebody gave it to me. I was very influenced. And I read it in preparation for the argument as well. I think the argument there, Your Honor, is that there are some types of claims that involve so much subjectivity in the claim that sampling is not appropriate for them. Let me say a couple of things about that. First, that's not this case. And, Nancy, you should never give it argument, but I'll say it anyway. And that's not this case for a reason. These are claims that, for the most part, the exams were conducted in a kind of mechanical fashion where patients were monitored continuously at four- to six-week intervals without any kind of underlying medical condition warranting monitoring at that frequency. There is no subjective element there as to whether those claims are payable under the Medicare statute. We've cited a regulation. It's 42 CFR 411.15 that says with limited exceptions that are not applicable here, these kinds of routine screening tests, routine physical exams, in the absence of an underlying medical condition are not covered. There's no subjectivity there. It doesn't matter whether the provider, the doctor, thinks examinations on a routine basis would be beneficial for his or her patient. He or she is free to do that, but he or she is not free to submit a claim for Medicare reimbursement in that context because the statute has an objective, bright-line rule that such claims are not payable. Even in cases where there is more of a subjective element to the provider's determination of what kind of care or treatment to be rendered with appropriate statistical evidence, with an appropriate evidentiary foundation, there may be ways of dealing with that on a statistical basis. We're not here to say there's a per se rule that the court must always in every case accept statistical sampling. What the case law indicates is that there has to be a kind of evidentiary foundation showing that statistical sampling in the specific context in which it is used is appropriate. If that showing is made, then the case can go to the jury or the court as fact finder, and the fact finder gets to determine how much weight to be accorded to that. So long as even in cases where there is an element of subjective evaluation to the provider's decision, statistical sampling can be used in an appropriate setting. But, again, that's not this case. Unless the court has any further questions, I have nothing. Any further questions? Thank you, Mr. Clare. Thank you. Thank you. Rebuttal? I think the issue is whether or not this finding is unreasonable, and I realize that's the uphill battle of my argument today. But I think even the government's argument is, they talked about how the jury could have found, using one number or a different number, any number of different combinations to this verdict. And I think what that shows is that this verdict, as they found it, is not based upon any extrapolation method. The extrapolation method they were talking about was an average payment of $56, if you multiply that times the number of claims. The $997,000 number, that's a $42 loss to the government. What they found was different from that. Mr. Thompson, if the jury had returned a verdict that was within the range of what the government had asked for in damages, would you be making an argument today that that was not based upon the record? Your Honor, they didn't provide any range. The only number they presented, and what's unique in these cases is, all of the other extrapolation cases that I've reviewed, the district courts have adopted the finding of the government. There's not been a situation that I've seen where a jury has returned a verdict with its own extrapolated number. The jury created this number themselves. The government only presented one number. They said 25 out of 30 claims, our number is $974,000. But if the jury had returned a verdict for that number the government had asked for, you would not be arguing it was unreasonable, would you? Correct. If they had found that number, there would be no argument because they found those number of false claims and it's supported by the mathematics. But you're saying a number that's less than that number is unreasonable. It is unreasonable because there's no mathematical basis for the number. And I know a jury doesn't do that. In a lot of cases there's not. I mean, just take a personal injury case where the plaintiff's lawyer asks for a million dollars for the injury and the jury comes back with $250,000. I mean, who knows how they came up with that. But as long as the million dollars was in the realm of rational damages, a lesser figure necessarily is as well. And we don't require mathematical precision. In fact, the jury instruction that you did not object to actually says that damages don't have to be proved in mathematical precision. And that's kind of what you're asking for here. In those cases, the jury's always provided a range, zero to $1 million. Or with medical bills, they will say the medical bills are this number to this number. In this situation, the jury wasn't provided that. They were provided one number for 25 claims. When the number of claims changed, there wasn't a range provided for any other claims. There wasn't a chart submitted. The jury just had to guess at what number they could do that. And their mathematics is actually not. There's over a trillion combinations of the 13 out of 30 claims, and their finding is not any of those. Thank you. Anything further? No, thank you. All right. Case will be submitted. I think that concludes the hearing.